UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | |
| | : | |
| MONTRAY AVENT | : | Case No. 25-mj-260 |
| | : | |
| Defendant. | : | |
| | : | |

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its request that defendant MONTRAY AVENT be detained pending trial of this matter pursuant to 18 U.S.C. § 3142(f)(1)(A). The defendant is charged with Advertisement of Child Pornography, in violation of 18 U.S.C. §§ 2251(d). Advertisement of Child Pornography is a crime of violence, and there is no condition or combination of conditions that will reasonably assure the safety of children in the community – both in the physical world and online – if the defendant is released. As detailed below, an analysis of the factors set forth in 18 U.S.C. § 3142 leads to the conclusion that detention is the only way to protect children in the community and to ensure the defendant's future appearance.

**FACTUAL BACKGROUND**

The National Center for Missing and Exploited Children (NCMEC) is a non-profit 501(c)(3) organization that serves as a national clearinghouse and resource center for families, victims, private organizations, law enforcement, and the public on missing and sexually exploited children. NCMEC operates a CyberTipline and Child Victim Identification Program. Through the Cyber Tipline, Internet Service Providers (ISP), Electronic Service Providers (ESP), and

1

individual persons may notify NCMEC of online child sexual abuse images. NCMEC makes information submitted to the CyberTipline and Child Victim Identification Program available to law enforcement agencies. As more fully laid out in the complaint in this matter, a number of CyberTips between April 13, 2025, and June 24, 2025, were received related to the IP address of 207.172.94.150 (RCN Telecom Services). RCN Telecom Services reported that the account is registered to Monica Avent of XXX Wahler Place Southeast, Washington, D.C. 20032. RCN Telecom services indicated that the account had been active since February 22, 2025. Through subsequent investigation, Monica Avent was identified as the mother of the defendant, Montray Avent.

NCMEC Cybertip #214767794, which was reported on June 24, 2025, was generated after an employee of Dropbox, Inc. reported that a Dropbox user had uploaded two files of suspected child sexual abuse material (CSAM) on June 24, 2025, to their Dropbox. This dropbox was created on June 24, 2025, with an email address of freebandyn@gmail.com and Dropbox user ID 2613821201. Law enforcement reviewed the content provided by Dropbox and observed the following:

- **46cbd544be12d658531f6db22a1f3ed6**: A five minute and seven-second-long video that shows an adult female sitting completely nude next to a completely nude prepubescent boy. The boy is observed penetrating the female's genitals and eventually the woman penetrates her own mouth with the penis of the boy.

- **0e46c6c399bc7a5795b77fc3e2a2cc6f**: A five minute and six-second-long video that that shows a close view of a prepubescent girl's genitals. The child is observed penetrating her genitals with her fingers and manipulating the genitals to expose them to the camera.

In addition to the NCMEC Cybertip related to dropbox, eleven additional Cybertips from the same IP address were identified, all provided by X Corp (Twitter) employees. Each Cybertip reported a tweet or multiple tweets which included at least one publicly viewable file containing CSAM. Those NCMEC Cybertips are summarized below:

- NCMEC Cybertip #209254929 (April 13, 2025): X Corp account of "Brashpyt (1911288156638339072)" with an email address of Bray314@yahoo.com had posted a tweet that included a file viewable with the tweet.

    - **Tweet Content:** "☀ #nsfwtwt #pyt[1] #youngpyt #horny #sellingvideos #sellingcontent."

    - **File Content - ba89a130d713aca772f8f69a27f2d734:** The file is a one-minute-long video that shows two completely nude pubescent females standing in front of a camera. The children are observed without pubic hair and have underdeveloped breasts. Both children are seen penetrating their own genitals with their fingers during the video.

- NCMEC Cybertip #209677445 (April 20, 2025): X Corp account of "Pytuser000 (1913711174459510784)" with an email address of 66hats@Duck.com had posted a tweet which included a file viewable with the tweet.

    - **Tweet Content:** "dm me for file over 600+ videos #pyt #realpyt #sellingcontent #bored #younggirl."

    - **File Content - 79db9f003a0b8d60483bbf5ae8908ab2:** The file is a forty-eight-second-long video that shows a nude child from the waist down laying

---

[1] "Pyt" commonly stands for "pretty young things" and is commonly used by individuals with a sexual interest in children, however, it can also refer to young individuals above the age of 18.

on her stomach on a mattress. The child appears to be prepubescent based on the child's body size and face profile. The erect penis of an adult male is visible above the child and subsequently rubbed against the child's genitals and anus. The camera pans out as the adult male is masturbating and the back of the child's head is visible.

- NCMEC Cybertip #209677997 (April 20, 2025): X Corp account of "Vashmotion (1911408649894764545)" with an email address of Babyzracks@Gmail.com on April 13, 2025, had posted a tweet which included a file viewable with the tweet.

    o **Tweet Content:** "$25 pyt dropbox 600-700 videos #pyt #youngpyt #youngteen #teenthot."

    o **File Content - 97866c03fef1935f7e81ce5477b70aa3:** The file is a twenty-six-second- long video that shows a screen recording of what appears to be a cloud storage account. The account is labeled, "PYT COMBINED 🔞" and has a visible folder labeled, "Blackk child porn." The screen recording also displays numerous thumbnails of videos of what appears to be various predominantly pubescent young females engaged in sexual acts, sexual contacts, and/or lewd / lascivious displays of their genitals.

- NCMEC Cybertip #209792881 (April 22, 2025): the X Corp account of "liegepyt (1914129959221649408)" with an email address of Exert-false-study@Duck.com had posted numerous tweets which included multiple files of potential CSAM viewable with the tweets.

4

- o **Tweet Content Example:** "if my page get deleted I'm making a new one but dm me to buy 😘 #pyt #ebony #freakyteen #schoolthot #ebonypyt #blackpyt #pytthot #ebonythot #thot #youngslut #youngpyt."

- o **File Content Example - 6470978fbc59d0147391f09a6aded6c3:** The file is an eleven-second-long video that shows what appears to be a prepubescent male penetrating the genitals or anus of another child. The video has a large pizza emoji placed on the middle of the screen.

- NCMEC Cybertip #211561950 (May 6, 2025): the X Corp account of "PytUser0000 (1915631439367790597)" with an email address of Backdoorslimee@Gmail.com had posted numerous tweets which included files of potential CSAM viewable with the tweets.

  - o **Tweet Content Example:** "dm me to buy videoed or files before page get deleted #nsfw #youngpyt #youngthot."

  - o **File Content Example - 5cfed7c6b0c605c709cac05c82b79424:** The file is a thirty-two-second-long video that shows a pubescent female penetrating her mouth with the erect penis of a prepubescent boy who is nude from the waist down. The female is nude with her breast exposed to the camera.

- NCMEC Cybertip #211621685 (May 7, 2025): the X Corp account of "pytuserr0 (1919860212053508098)" with an email address of Freebandsx6@icloud.com had posted numerous tweets which included one file of potential CSAM viewable with the tweets.

  - o **Tweet Content Example:** "dm me for files #nsfwtwt #youngpyt #youngteen"

5

- **File Content - 4757edc925d5cf95d12759ceb3d260a2:** The file is a fifty-three-second-long video that shows a prepubescent male who is completely nude standing behind a prepubescent female who appears to be nude from the waist down. The boy is observed thrusting into the female's genitals or anus and manipulating his penis during the video.

- NCMEC Cybertip #212064475 (May 15, 2025): the X Corp account of "Mspytuser1 (1922638777832611840 with an email address of Kavanrx@aol.com had posted a tweet which included a file viewable with the tweet.

    - **Tweet Content:** "Lvl14 creaming 📲🎀 #pyt #youngthot #youngteen #horny #blackteen #nsfwtwt #teenthot."

    - **File Content - 3ad141dce73aeb9d9f1e654e88f43653:** The file is a thirty-one-second-long video that shows the close recording of a person penetrating a female's genitals with two of their fingers. The individual appears to be a teenager however it cannot be determined if she is a minor.

- NCMEC Cybertip #212732613 (May 26, 2025): the X Corp account of "Msspytuser (1926266832807137280)" with an email address of 1doublerx@gmail.com had posted a tweet which included a file viewable with the tweet.

    - **Tweet Content:** "$11 file 📲🎀 #pyt #youngthot #youngteen #horny #blackteen #nsfwtwt #teenthot."

    - **File Content - 1fa479c5f9bf288c6883b7f342537d02:** The file is a twenty-two-second-long video that displayed a screen recording of what appears to be a cloud storage application on a cellular phone. The screen recording

      shows a folder within the cloud storage application labeled, "pytblack" and displays thumbnails of videos stored on the application. The thumbnails include what appear to be adults, teenagers, and prepubescent children engaged in sexual acts, sexual contacts, and/or lewd/lascivious displays of their genitals. Specifically, one of the thumbnails is of a prepubescent boy nude from the waist down with an adult female nude from the waist down sitting on the boy's lap while he grasps the adult female by the hips.

- NCMEC Cybertip #212971162 (May 28, 2025): the X Corp account of "mspytusarr (1927801091267383297)" with an email address of is4rps@gmail.com had posted a tweet which included a file viewable with the tweet.

    o **Tweet Content**: "$11 file 📲🎀 #pyt #youngthot #youngteen #horny #blackteen #nsfwtwt #teenthot."

    o **File Content** This was the same file distributed by the user in NCMEC CyberTip #212732613.

- NCMEC CyberTip #213220703 (May 30, 2025): the X Corp account of "helovepyt (1928442698811531264)" with an email address of slimebeenlit@Gmail.com had posted a tweet which included a file viewable with the tweet.

    o **Tweet Content:** "$11 file 📲🎀 #pyt #youngthot #youngteen #horny #blackteen #nsfwtwt #teenthot."

    o **Profile Content:** "im back $13 to join gc 🍸🎀 follow me they cant stop me Dm me to get files / links , custom videos , freaky ft , $13 to join and get Gc"

7

- **File Content:** This was the same file distributed by the user in NCMEC CyberTip #212732613 and NCMEC Cybertip #212971162.

- NCMEC CyberTip #213430829 (June 7, 2025): the X Corp account of "mspytuser0 (1921937232879140864)" with an email address of Standonbands@Gmail.com had posted a tweet which included a file viewable with the tweet.

    - **Tweet Content:** " 🔢 🎀 #pyt #youngthot #youngteen #horny #blackteen #nsfwtwt #teenthot."

    - **Profile Content:** "im back here to stay 🎀 500 followers ? Dm me for files , custom videos , Pyt videos every etc 🎀 - girl owned 🎀 follow me"

    - **File Content - 2aecf0c12b804ee74e9f0467d8ba68fe:** The file is a one-minute and twenty-three-second-long video that displays a pubescent female standing in front of a camera completely nude. The girl has underdeveloped breasts and minimal pubic hair. The child penetrates her genitals with purple hairbrush.

During the investigation, law enforcement subpoenaed information for the identified email accounts used to register the reported X Corp accounts. The email accounts were all accessed from the IP address of 207.172.94.150, though were mostly created with no other identifying information. However, the investigation did find that the email address of backdoorslimee@gmail.com, which had been used to register the reported X Corp account reported in NCMEC CyberTip #211561950, had been registered with an email address of Montrayavent@gmail.com and a phone number of 202-XXX-3011. Upon further investigation of the phone number, law enforcement found that an individual named Montray Avent (05-XX-2004) of XXX Wahler Place Southeast, Washington, D.C. 20032 was associated with the phone number.

8

Additionally, during the investigation, a search warrant was executed on the Dropbox account, 2613821201 (Dropbox User Number) / Freebandyn@gmail.com (Linked Email), on the eleven separate X Corp accounts, and on the eight separate google accounts.

Law enforcement reviewed the contents of Dropbox account #2613821201 which was registered with the email address of Freebandyn@gmail.com. A review of the deleted files within the Dropbox production revealed a photograph of a black male in a folder labeled "Camera Uploads." The photo is attached below, and a photograph of Montray Avent is next to it. The male in the photo on the left uploaded to Dropbox appears to be Montray Avent.

 

Law enforcement also located an image that appears to be screenshots of files uploading to Dropbox. The files are all labeled with the prefix "Nl & Pyt"[2] followed by a number and the phrase "Uploaded to Dropbox" below the file name. One of the files shows two nude pubescent

---

[2] Based on experience, law enforcement understands nl to be an abbreviation for "no limits" and pyt to be an abbreviation for "pretty young thing." Both abbreviations are commonly used by individuals who are distributing, receiving, transporting, and/or possessing child sex abuse materials.

9

females kissing each other. The thumbnail has a progress bar next to it that indicates the file was being uploaded and the file name, "Video June 24 2025, 12 59 32 PM."

Law enforcement reviewed the files that had not been deleted from the Dropbox account and located the file, "Video June 24 2025, 12 59 32 PM" within a folder labeled, "nl and pyt." The video was reviewed by law enforcement and found to show two completely nude girls engaged in the penetration of their anus, genitals, and mouth by sex toys, their fingers, and their mouths. The girls appear to be pubescent with slight breast development but no pubic hair. The girl's physical size is also consistent with that of a minor child.

Law enforcement found that the folder labeled, "nl and pyt" contained a total of one hundred and seventeen (117) files which were almost all video files displaying prepubescent, pubescent, or what appears to be post pubescent minor females engaged in sexual acts, sexual contacts, and/or lewd / lascivious displays of their genitals. In addition, the review of the contents of the Google production and the cell phones collected from the defendant revealed additional CSAM content.

The defendant spoke with law enforcement during a custodial interview on November 7, 2025. During the interview, the defendant made several admissions, including confirming that the various X Corp (Twitter) handles were handles that he operated to sell child pornography. When explaining why he was advertising and selling child pornography, the defendant said, "I just like money, so when I see things that I can get money from, I just do it, and I don't think about the consequences." The defendant reported that he made approximately $1,000 from the sale of child pornography, and he would receive and trade child pornography on telegram for the purpose of selling that material. While the defendant in his interview seemed to distance himself from those who watch child pornography, he readily acknowledged profiting off the sale of videos of children

being raped and at one point reaffirmed that, "I just thought about the profit." Defendant also indicated in his interview that he had stopped selling, but a review of the cell phones in the possession of the defendant revealed CSAM materials, including several videos saved to his videos and a still-active and previously unidentified X Corp account where defendant acknowledged selling child pornography.

The defendant also confirmed in his interview with law enforcement that the defendant engaged in oral sex and other sexual contacts with a 12-year-old child in July 2025, though the defendant indicates he wouldn't have gone over to the 12-year-old's house if she did not have his hoodie. He said that he was aware that she was recording a sexual interaction between him and the 12-year-old, and that she sent him the recording via Instagram (according to the defendant, this did not depict oral sex, but instead depicted the defendant ejaculating on the upper body of the 12-year-old child). In addition, the defendant told law enforcement that he recorded engaging in sex with what he told law enforcement was a 17-year-old from Reston, VA. He told law enforcement that he recorded the interaction on the 17-year-old's phone with her knowledge.

## PROCEDURAL HISTORY

The defendant was arrested on November 7, 2025, and made an initial appearance before the United States District Court for the District of Columbia on the same day. On the government's motion, the defendant was held pending a detention hearing, which is scheduled for November 13, 2025. The government now respectfully submits this memorandum in support of its motion for pretrial detention.

## APPLICABLE LEGAL STANDARD

The defendant is charged with Advertisement of Child Pornography, in violation of 18 U.S.C. § 2251(d), a crime of violence. 18 U.S.C. § 3156(c) defines a "crime of violence" to

11

include violations of Title 110, under which § 2251(d) falls. Further, § 2251(d) gives rise to a rebuttable presumption of detention pursuant to 18 U.S.C. § 3142(e)(3)(E), where it is to be *presumed* that no combination of conditions will protect the community or assure the defendant's return. § 3142(e)(3)(E). This presumption "operate[s] at a minimum to impose a burden of production on the defendant to offer some credible evidence contrary to the statutory presumption." *United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985); *United States v. Portes*, 786 F.2d 758, 764 (7th Cir. 1985) (observing that the presumptions in § 3142(e) "are rebutted when the defendant meets a burden of production by coming forward with some evidence that he will not flee or endanger the community if released"); *see also United States v. Hir,* 517 F.3d 1081, 1086 (9th Cir. 2008). Even if the defendant does not pose a flight risk, danger to the community by itself is a sufficient reason to order pretrial detention. *United States v. Salerno*, 481 U.S. 739, 755 (1987).

In determining whether the defendant has overcome that presumption, the Court must consider the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *See* 18 U.S.C. § 3142(g). Even when the defendant has offered evidence to rebut the presumption of dangerousness, the presumption remains a factor in the court's analysis of the § 3142(g) factors. *See United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1983) ("Use of that word [rebutted] in this context is somewhat misleading because the rebutted presumption is not erased. Instead, it remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g)."). As the Sixth Circuit has observed, "[t]he presumption [of dangerousness] remains as

a factor because it is not simply an evidentiary tool designed for the courts. Instead, the presumption reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial." *United States v. Stone*, 608 F.3d 939, 945-46 (6th Cir. 2010) ("To rebut the presumption, therefore, a defendant should 'present all the special features of his case' that take it outside 'the congressional paradigm.'").

## ANALYSIS

The defendant poses a significant danger to children in the community – including children who are being preyed on over the internet as well as children in the physical world – and there are no conditions short of detention that will protect children from the defendant's predation. For the reasons addressed below, the factors outline in 18 U.S.C. § 3142(g) weigh in favor of detention and Mr. Avent cannot rebut the presumption of detention.

### A.   Nature and Circumstances of the Charged Offense

Montray Avent's conduct in this case poses a risk to children in the physical and online world. The defendant, on multiple occasions, advertised for sale child sexual abuse materials (CSAM) via X (formerly, twitter), even posting CSAM materials publicly in his advertisements. The defendant, knowing what he was doing was illegal, was persistent in his efforts, telling his followers that no matter how many times his account gets shut down, he'll keep coming back. Many of the videos posted contained prepubescent children engaged in sexual acts. Moreover, the defendant possessed large quantities of CSAM in his Dropbox account, categorized into pyt (which is understood to abbreviate pretty young things) and nl (which is understood to abbreviate no limits). In his custodial interview with law enforcement, the defendant openly acknowledged his sale of CSAM via X. Mr. Avent's advertisement and distribution of CSAM is in the context of actual abuse of children in real life, including Mr. Avent's acknowledgement in his interview with

law enforcement that he had oral sex with a 12-year-old in July of 2025 and sex with a 17-year-old minor in Virginia (both of which had sexual acts or contacts recorded with the defendant's knowledge).

As Chief Judge Boasberg noted in considering the government's appeal of the magistrate court's release order in *United States v. Reid*, 25-cr-311 (JEB), it is important to consider where the defendant's behavior falls on the spectrum of conduct commonly seen in child exploitation cases. At one end of the spectrum are individuals who distribute a single image of child pornography. At the other end are defendants who are engaging in hands-on abuse of a child or running forums dedicated to trading child pornography. The government would submit that the defendant's conduct falls more towards the higher end of that spectrum. Mr. Avent not only advertised numerous CSAM files for sale in a public forum, despite his account being deactivated on numerous instances, but he also engaged in sexual acts with minors, including in a sexual act with a 12 year old child, a separate recorded sexual interaction with the same 12-year-old child, and in recording of a sexual act with a 17-year-old.

The defendant's conduct demonstrates that he poses a danger both to children in the physical world, as well as to children who are suffering the aftermath of having images of their sexual abuse distributed online.  On a broad level, children depicted in sexually explicit images and videos are victimized at the time the images were created, and they are re-victimized each time an individual, like the defendant or those he sells to, views the images for their own sexual gratification. As explained by the Sixth Circuit in a child pornography case:

> ...we have numerous victims in a case like this, not one victim. Every image of a child, every image of a non-adult engaged in any type of sexual activity or any type of pose without clothing or any type of exploitation constitutes an additional case of victimizing a child. Without a demand for that type of information and that type of viewing from persons like this defendant, we don't know how many child abuse cases we could prevent. And as

> long as there is a demand to purchase images of child pornography, there is going to be an unending stream of child abuse of…children who are forced into these roles.
>
> ...every image has a child who has been exploited and abused, and that is the concern I have. It is the concern that I have when people are engaged in serially doing this, the effect it has on children throughout the world and the effect it has on their future lives.

*See United States v. Miller*, 665 F.3d 114, 121-122 (6th Cir. 2011) (quoting the district court) (rejecting an attack on the child pornography sentencing guidelines and highlighting the grave harm caused to the victims depicted in child pornography images and the evidence that traffickers and possessors of child pornography are the impetus for the creation of more sexual abuse of minors).

Indeed, Congress has recognized the serious nature of crimes involving child pornography and the long-term damage that these crimes can cause, by specifying that these crimes carry a rebuttable presumption of detention. § 3142(e)(3)(E), and, in the case of advertisement of CSAM, a fifteen-year mandatory minimum sentence. 18 USC § 2251(e). The defendant is alleged to have advertised and distributed numerous videos of child pornography through numerous public tweets on X. In these circumstances, there is no combination of conditions that will protect children both online and in the physical world from the danger posed by the defendant and the Court should detain Mr. Avent pending trial. This factor weighs heavily in favor of detention.

    **B.**    **The Weight of the Evidence Against the Defendant**

The weight of the evidence against the defendant is very strong and weighs heavily in favor of detention. The government is in possession of warrant returns in this case that include high volumes of CSAM in the defendant's accounts. Moreover, there was CSAM located on the defendant's phones, which were obtained during a search of the defendant's residence and identified by the defendant as his property. Finally, the defendant admits to selling child pornography via the multiple X handles in a custodial interview with law enforcement (during that

15

interview, the defendant also acknowledged engaging in oral sex with a twelve-year-old child in July of 2025, which he indicates was partially recorded by the twelve-year-old child and sent to him via Instagram AND that he recorded himself having sex with a seventeen-year-old minor from Virginia). It is not questionable whether the files advertised by the defendant qualify as CSAM— these numerous files clearly depict the sexual abuse of young children. Further, the defendant has acknowledged that these are, in fact, his accounts and he did engage in the sale of child pornography, identifying at least $1,000 in profits from doing so.

A district court must consider the weight of the evidence when assessing whether the defendant is a danger or poses a risk of flight and has broad discretion to determine the relative weight of each of the four Bail Reform Act factors. *See United States v. Blackson*, No. 23-CR-25 (BAH), 2023 WL 1778194, at *9 (D.D.C. Feb. 6, 2023), *aff'd*, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023) ("First, nothing in the BRA's text requires or alludes to a differing weighing of the factors nor any hierarchy among the factors."). No factor is categorically of greater or lesser weight than the others. As the Second Circuit Court of Appeals observed:

> Although § 3142(g) of the Bail Reform Act lists various factors to consider, it says nothing about the relative weight a court should give them when deciding whether to release or detain a defendant. *See generally* 18 U.S.C. § 3142(g). That silence is unsurprising, because the weight given to each factor will inevitably vary from case to case, and might even vary depending on whether the inquiry relates to a defendant's danger or to his risk of flight. What is more, certain factors might interact with one another in a particular case in a way that alters a court's analysis of a defendant's danger to the community or flight risk.

*United States v. Zhang*, 55 F.4th 141, 149-50 (2$^d$ Cir. 2022). In *Zhang*, the Second Circuit found that the district court gave appropriate weight to the second factor – the weight of the evidence – in determining that there was "significant evidence" that Zhang had in fact committed the charged murder. *Id.* at 150-51. Affirming the district court's relative reliance on the weight of the evidence in determining dangerousness, the court explained:

16

> In making a predictive assessment of the defendant's future dangerousness if released into the community, common sense and § 3142(g)(2) aligned with the district court's consideration of the strength of this evidence, especially coupled with the nature of the charged offense. It stands to reason that the more strongly the evidence indicated that the defendant committed the murder, the more likely he poses a danger to the community if released on bail.

*Id.* Similarly, in considering whether the defendant poses a risk of flight, the court explained that where "the evidence against a defendant is strong, it follows that the defendant faces an elevated risk of conviction (and of the attendant punishment) and therefore may present an elevated risk of flight." *Id.* at 151-52.

The *Zhang* court's analysis has been cited approvingly in the District Court of the District of Columbia in *Blackson*, and its analysis holds true here as well. *Blackson,* 2023 WL 1778194, at *9-10. The evidence against the defendant is strong, suggesting both a heightened danger to the community as well as an elevated risk of flight. The strength of the evidence heavily supports detention in this case, and it indicates the significant risk of danger posed by the defendant.

    **C.**    **History and Characteristics of the Defendant**

While the defendant does not have any criminal history, there is reason to believe that the defendant has engaged in criminal conduct prior to the conduct in this case. The government's evidence shows a persistent effort by the defendant to sell child sexual abuse materials via X, including numerous tweets over an extended period of time offering the sale of CSAM to the general public through X. This persistent effort to profit from the sexual exploitation of minors was in the context of defendant's own admitted sexual abuse of children, including engaging in oral sex and other sexual contacts with a twelve-year old child, some of which were recorded. The defendant's own words articulate a clear understanding that he was doing wrong AND that he was going to do it anyway. Mr. Avent's conduct in this case was not one instance of poor decision

17

making – it was a brazen effort to profit on the exploitation of minors. The defendant's comfort in sustained and open advertising and distributing of CSAM and large collection of CSAM show a pattern of conduct that is only escalating. The defendant's own admissions of his knowledge of his wrongdoing and of other prior uncharged wrongdoing further support that there are no conditions or combination of conditions that could keep the community safe.

This evidence shows that the defendant's lack of criminal history does not accurately portray the history of criminal conduct. Thus, the defendant's history and characteristics weigh in favor of detention.

### D. The Nature and Seriousness of the Danger to Any Person or the Community

Finally, the sexual exploitation of children presents a serious danger to the community, which results in severe mental, emotional, and physical trauma to the countless children who are victimized by offenders like the defendant and others with a demonstrated sexual interest in children. It is this type of harm that led Congress to create the statutory presumption of detention in these cases and to provide for a mandatory minimum sentence if convicted.

That child pornography offenses are serious is a fact noted by the Supreme Court. At least as early as the landmark decision, *New York v. Ferber*, 458 U.S. 747 (1982), the Supreme Court referenced numerous research materials detailing the harm to children as a result of the production and trafficking of child pornography.

> [P]ornography poses an even greater threat to the child victim than does sexual abuse or prostitution. Because the child's actions are reduced to a recording, the pornography may haunt him in future years, long after the original misdeed took place. A child who has posed for a camera must go through life knowing that the recording is circulating within the mass distribution system for child pornography."

Shouvlin, Preventing the Sexual Exploitation of Children: A Model Act, 17 Wake Forest L.Rev. 535, 545 (1981). *See also* Child Exploitation 292 ("[I]t is the fear of exposure and the tension of

18

keeping the act secret that seem to have the most profound emotional repercussions"); Note, Protection of Children from Use in Pornography: Toward Constitutional and Enforceable Legislation, 12 U.Mich.J. Law Reform 295, 301(1979)(interview with child psychiatrist) ("The victim's knowledge of publication of the visual material increases the emotional and psychic harm suffered by the child"). 4 58 U.S. 758, n.9.

> Moreover, as the Eastern District of New York has found:
>
> ...the issue is not only defendant's potential abuse of children and his interaction with children if on bail, but also his ability, if he is released on bail, to attempt to possess additional child pornography, or to communicate and interact with (via email, internet, or phone) others involved in the possession, sale, and distribution of child pornography or other sexual abuse of children, which would also create a clear danger by facilitating the criminal and dangerous exploitation of children by other individuals.

*United States v. Reiner*, 468 F.Supp.2d 393, 397 (E.D.N.Y. 2006). The *Reiner* court further found that there were no conditions in that case that could reasonably assure the safety of the community "[i]n this day and age, with devices such as cellphones, Blackberries, and laptops..." *Id.* at 399; *see also United States v. Blankenship*, 2008 WL 1925137 (S.D.W.Va. April 29, 2008) (unpublished) (noting the ease of accessing the internet by means of various devices and stating "[t]he Court finds that the evidence clearly and convincingly establishes that, confined to his home and electronically monitored, defendant would not be prevented from obtaining the means to access the internet and attempting again to obtain child pornography and in this poses a danger to children and the community"); *United States v. Doyle,* 2007 WL 1097844, *1 (W.D.Va. 2007)(finding danger of future offenses "especially considering that pornographic images of children are widely available on the internet and can be easily accessed by a personal computer"), conviction rev'd on other grounds, 650 F.3d 460 (2011). The risk the defendant poses to children in the community is significant and weighs heavily in favor of detention.

At this time, we have no information regarding a third-party custodian for the defendant. However, the defendant in this case showed a clear disregard for the law, creating new X accounts to continue his advertisement of CSAM, even when his other accounts were flagged or terminated, which shows that the defendant is willing to be persistent and circumvent clear rules of engagement and use in order to engage in criminal conduct.

## **CONCLUSION**

For all of the reasons set forth above, a consideration of the evidence in this case and the applicable statutory factors compels the conclusion that the defendant should be detained pending trial.

Respectfully submitted,

Jeanine Ferris Pirro
United States Attorney

By: */s/ Richard Kelley*
Richard Kelley
DC Bar No. 1026390
Assistant United States Attorney
601 D St NW
Washington, DC 20530
(202) 834-3571
richard.kelley2@usdoj.gov